# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **ERICA L. BAKER,** | ) | |
| Plaintiff | ) | Civil Action No. 2:22cv00010 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social** | ) | By: PAMELA MEADE SARGENT |
| **Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

### *I. Background and Standard of Review*

Plaintiff, Erica L. Baker, ("Baker"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 423 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). Neither party has requested oral argument; therefore, this case is ripe for decision. As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Baker protectively filed her application for DIB on April 3, 2020, alleging disability as of February 28, 2020, based on degenerative disc disease of the cervical and lumbar spine; anxiety; depression; muscle spasms; neuropathy; high cholesterol; gastroesophageal reflux disease, ("GERD"); shoulder and neck pain; and difficulty standing.  (Record, ("R."), at 15, 172-73, 212, 280.) The claim was denied initially and upon reconsideration. (R. at 108-12, 118-25.) Baker then requested a hearing before an administrative law judge, ("ALJ"). (R. at 126-27.) The ALJ held a hearing on June 21, 2021, at which Baker was represented by counsel. (R. at 42-78.)

By decision dated July 26, 2021, the ALJ denied Baker's claim. (R. at 15-30.) The ALJ found Baker meets the nondisability insured status requirements of the Act for DIB purposes through December 31, 2024. (R. at 17.) The ALJ found Baker had not engaged in substantial gainful activity since February 28, 2020,[1] the alleged onset date. (R. at 17.) The ALJ determined that Baker had severe impairments, namely, lumbar degenerative disc disease; obesity; depression; and anxiety, but he found Baker did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.)

---

[1] Therefore, Baker must show she was disabled between February 28, 2020, the alleged onset date, and July 26, 2021, the date of the ALJ's decision, to be eligible for benefits.

The ALJ found that Baker had the residual functional capacity to perform sedentary work,[2] except she could frequently climb ramps and stairs, balance, kneel and crawl; she could occasionally stoop and climb ladders, ropes and scaffolds; she could occasionally work at unprotected heights and around hazardous machinery; she could perform simple, routine tasks; and she required a cane for prolonged ambulation. (R. at 22.) The ALJ found Baker was unable to perform any past relevant work. (R. at 28.) Based on Baker's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Baker could perform, including the jobs of a document preparer, a charge account clerk and an addressing clerk. (R. at 28-29, 73-76.) Thus, the ALJ concluded that Baker was not under a disability as defined by the Act from the alleged onset date of February 28, 2020, through the date of the decision, and she was not eligible for DIB benefits. (R. at 29.) *See* 20 C.F.R. § 404.1520(g) (2022).

After the ALJ issued his decision, Baker pursued her administrative appeals, (R. at 320-22), but the Appeals Council denied her request for review. (R. at 1-5.) Baker then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2022). This case is before this court on Baker's motion for summary judgment filed

---

[2] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2022).

November 14, 2022, and the Commissioner's motion for summary judgment filed January 25, 2023.

## II. Facts

Baker was born in 1972, (R. at 28, 172), which, at the time of the ALJ's decision, classified her as a "younger person" under 20 C.F.R. § 404.1563(c). Baker has a college education and past work experience as a secretary, an office manager, a receptionist, an outpatient receptionist, a cashier and a department supervisor/floor manager. (R. at 50-51, 72-73, 213.) Baker testified that, when she was working, she experienced at least one panic attack daily. (R. at 58.) She stated she was prescribed a cane, which she used regularly. (R. at 60.) Baker stated she had 10 nerve ablations; an epidural injection; two spine injections; and multiple trigger point injections.[3] (R. at 59.)

In rendering his decision, the ALJ reviewed records from Jo McClain, Psy.D., a state agency psychologist; Dr. Michael Koch, M.D., a state agency physician; Leslie E. Montgomery, Ph.D., a state agency psychologist; Dr. Brian Strain, M.D.,

---

[3] In September 2020, she had a nerve ablation from L1-S1, bilaterally. (R. at 1037.) In January 2021, Baker received bilateral sacroiliac, ("SI"), joint injections. (R. at 859.) In February and April 2021, Baker reported good relief from her trigger point injections, and repeat injections, in addition to a lumbar epidural steroid injection, were administered. (R. at 845-47, 852-53, 856-58, 896-901.) On April 5, 2021, Baker reported that she obtained no relief from the epidural steroid injection, but stated that the pain that radiated below her knee had resolved. (R. at 842.) On April 22, 2021, Baker received radiofrequency lesioning of the lumbar medial branch with C-arm assistance. (R. at 1013-15.)

a state agency physician; Dr. Karam Pathan, M.D.; Gastroenterology Associates; BHMA Neurosurgery, Spine and Rehabilitation, ("BHMA Rehabilitation"); Wellmont Medical Associates; Family Preservation of Virginia, ("Family Preservation"); Lonesome Pine Hospital; Thomas Renfro Clinic; Appalachian Rehabilitation Team, Inc., ("Appalachian Rehabilitation"); and Ballad Health Cancer Care.

By way of background, in October 2016, Baker underwent a left L5-S1 diskectomy, but continued to report ongoing bilateral lower extremity pain, numbness and burning sensation in both feet. (R. at 368.) In 2017, Baker had a hemilaminectomy at the L5-S1 level. (R. at 1037.) In June 2019, an MRI of Baker's lumbar spine showed post-operative changes at the L5-S1 level with epidural scarring and bulging annulus with facet arthropathy with moderate, bilateral foraminal narrowing; and bulging annulus and facet arthropathy at the L4-L5 level causing mild compromise of the thecal sac and moderate, bilateral lateral recess narrowing. (R. at 347-48.)

From March 2017 through February 2021,[4] Baker was treated at Wellmont Medical Associates for left foot, neck and back pain; lateral epicondylitis of the right elbow; GERD; and hyperlipidemia. During this time, Baker was fully oriented; her neck had normal range of motion; her cardiovascular and pulmonary examinations were normal; she had decreased range of motion and tenderness in her cervical and lumbar back; her abdomen had normal bowel sounds, exhibited no distension, mass,

---

[4] On February 28, 2020, Baker saw Dr. Ronald D. Sheppard, D.O., a physician with Wellmont Medical Associates, and reported back and neck pain. (R. at 388-92.) Except for Baker exhibiting decreased range of motion in her cervical and lumbar spine, her examination findings were normal. (R. at 391.)

tenderness, rebounding or guarding; she had full muscle strength; she had normal muscle bulk and tone; her straight leg raising tests were negative;[5] she had normal reflexes; and she had a normal gait, mood, affect, behavior, judgment and thought content. (R. at 329-30, 338-39, 383, 387, 391, 395-96, 399-400, 404, 410, 497-98, 502, 505, 508, 512, 515, 519-20, 778, 844-45, 849-50, 855-56, 862-63.) Baker reported she was able to perform self-care and household chores. (R. at 382, 394.) Baker was diagnosed with degenerative disc disease of the lumbar spine; GERD without esophagitis; cervical disc disease; mixed hyperlipidemia; chronic bilateral low back pain without sciatica; and spondylosis of the lumbar region without myelopathy or radiculopathy. (R.  at 387-88, 733.)

In October and December 2019, Baker saw Isaac Odell, P.A., a physician's assistant with BMHA Rehabilitation, and reported ongoing bilateral lower extremity pain and numbness; burning sensation in both feet and behind both knees; and low back pain, which she stated was worse than the leg numbness and tingling. (R. at 368-70, 372-74.) Baker had full motor strength in all extremities; her deep tendon reflexes were normoreflexic and symmetric; she had intact sensation; and she had a nonantalgic gait. (R. at 370, 374.) Odell ordered an electromyography, ("EMG"), and a nerve conduction velocity test of Baker's bilateral lower extremities. (R. at 370.) On November 12, 2019, Baker's EMG was normal. (R. at 374.) Odell diagnosed low back pain and lumbosacral radiculitis and referred Baker to pain management for evaluation. (R. at 374.)

---

[5] In February 2021, Baker's straight leg raise testing was positive on the left and equivocal on the right. (R. at 850, 855.)

From June through August 2020, Dr. Joseph W. Frye, D.O., a physician with Wellmont Medical Associates, ordered bilateral diagnostic lumbar medial branch blocks, and Baker reported significant reduction in pain. (R. at 728-30, 754-61, 775, 809-10, 881-83.)

From July 2020 through May 2021, Baker saw Lee Phillips, F.N.P., a family nurse practitioner, and Carrie Burke, L.P.C., a licensed professional counselor at Family Preservation, reporting mood swings, depression and anxiety. (R. at 818-26.) She stated she was depressed over the loss of her job, as she was recently laid off; and she could not sleep due to worrying about stressors, such as unemployment, COVID-19, medical problems and finances.[6] (R. at 818, 821, 824, 962, 967, 971, 975, 986, 990, 994.) Baker was cooperative, engaging and restless; her speech was normal with clear and coherent articulation; her insight was full; her judgment was good; she exhibited no functional impairment; her impulse control was good; her mood was anxious and irritable; and her affect was appropriate. (R. at 819, 822, 825, 958, 962-63, 967-68, 971-72, 975-76, 986-87, 991-91, 994-95.) While Baker reported that she was depressed, she stated that her moods were controlled with medication, and Xanax managed her anxiety. (R. at 818, 962, 967, 971, 975.)

On August 10, 2020, Jo McClain, Psy.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Baker had no limitations in her ability to interact with others and to adapt or manage herself and mild limitations in her ability to understand, remember or apply information and to

---

[6] Baker was worried as to how she would pay her bills after her unemployment ceased. (R. at 967, 971.) She stated she believed her medication was helping, but her circumstances were affecting her daily. (R. at 962.)

concentrate, persist or maintain pace. (R. at 83-84.) McClain noted Baker had no history of hospitalizations, and her mental examinations were normal. (R. at 84.) She also noted Baker began mental health treatment in July 2020, she worked skilled jobs for a sustained period; she socialized with family daily; she was able to pay attention depending on her pain level; she could follow spoken instructions better than written instructions; and she could handle stress, but struggled with handling changes in routine. (R. at 84.) On October 8, 2020, Leslie E. Montgomery, Ph.D., another state agency psychologist, completed a PRTF, which mirrored that of McClain. (R. at 98-99.)

On August 10, 2020, Dr. Michael Koch, M.D., a state agency physician, completed a medical assessment, finding Baker could perform light[7] work. (R. at 85-87.) He found Baker could stand, walk and sit six hours each in an eight-hour workday; push/pull as much as the lift/carry restrictions; frequently climb ramps and stairs, balance, kneel and crawl; occasionally climb ladders, ropes and scaffolds and stoop; crouch on an unlimited basis; and should avoid concentrated exposure to hazards. (R. at 86-87.) Dr. Koch found Baker had no manipulative, visual or communicative limitations. (R. at 87.) He noted he made this assessment based on Baker's back pain with prior surgery; her body mass index, ("BMI"), ranging between 30 to 35; and her examinations showing she had a normal gait, sensation and strength throughout, negative straight leg raising tests and reduced range of motion in her spine. (R. at 87.) Dr. Koch noted Baker's reports that she was able to drive and perform light household chores. (R. at 87.) On October 8, 2020, Dr. Brian

---

[7] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2022).

Strain, M.D., a state agency physician, completed a medical assessment, which mirrored that of Dr. Koch. (R. at 100-02.)

On September 1, 2020, Dr. Sheppard completed a medical assessment, finding Baker could lift and/or carry up to 10 pounds occasionally and frequently; sit, stand and/or walk for less than two hours each in an eight-hour workday; and never climb, stoop, kneel, balance, crouch or crawl. (R. at 831-33.) He found Baker was limited in her ability to reach and to push/pull, and she was restricted from working around heights and moving machinery. (R. at 832-33.) In making this residual functional capacity determination, Dr. Sheppard considered Baker's cervical and lumbar disc disease with stenosis; chronic pain and limited range of motion of the cervical and lumbar spine; and radiculopathy. (R. at 831-33.)

On September 3, 2020, Dr. Frye noted that Baker's cervical and lumbar back exhibited spasm and tenderness. (R. at 877-81.) On November 2, 2020, Baker was referred to physical therapy and given a prescription for a single point cane. (R. at 875-76, 949.) On November 4, 2020, Baker saw J. Philip Bentley, P.T., a physical therapist with Appalachian Rehabilitation, and reported issues with staggering.[8] (R. at 1037.) She reported she experienced two falls over the past three months. (R. at 1037.) Baker reported low back pain, which was aggravated by weight bearing activities. (R. at 1037.) Blevins reported Baker had a forward flexed standing posture and a forward head sitting posture, both with reduced lumbar lordosis; a limited active range of motion of the low back with pain during movements; muscle guarding and tenderness along the lumbar paraspinals, bilaterally; she had a fair +/

---

[8] On January 26, 2021, it was noted that Baker attended eight visits. (R. at 1055.) It also was noted that Baker could not be reached to assess whether continued therapy was needed. (R. at 1055.)

good static standing balance; she had fair dynamic standing balance; and she had low back mobility deficits associated with lumbar disc displacement. (R. at 1037-38.)

On November 17, 2020, Serena Blevins, N.P., a nurse practitioner with Wellmont Medical Associates, noted Baker's neck had muscular tenderness and decreased range of motion; both hips had a positive Faber test; she had tenderness in her back; she had multiple taut bands palpated in her neck, shoulders and upper back with associated jump signs; and she had bilateral positive Gaenslen's Test,[9] thigh thrust and Fortin finger test. (R. at 865-68, 873-75.) That same day, Dr. Frye opined Baker had clinical signs of SI joint dysfunction, and an injection was administered. (R. at 870-71.)

On January 12, 2021, Baker saw Whitney B. Mays, N.P., a nurse practitioner with the Thomas Renfro Clinic, and reported back and neck pain. (R. at 1001.) She stated she could not lift or stand for more than three to five minutes or sit for more than five minutes without interruption. (R. at 1000.) Baker was fully oriented; her neck had normal range of motion; her cardiovascular and pulmonary examinations were normal; her cervical and lumbar back exhibited decreased range of motion and tenderness; she had normal reflexes; and her mood, affect, behavior, judgment and thought content were normal. (R. at 1002.) Mays diagnosed degenerative disc

---

[9] Gaenslen's Test is one of the five provocation tests used to detect musculoskeletal abnormalities and primary chronic inflammation of the lumbar vertebrae and SI joint. *See* https://www.physio-pedia.com/Gaenslen_Test (last visited June 1, 2023).

disease, lumbar; lumbosacral radiculitis; Morton's neuroma[10] of the left foot; cervical disc disease; and spondylosis of the lumbar region without myelopathy or radiculopathy. (R. at 1003.)

On March 25, 2021, Baker saw Burke, and, despite reporting that medication helped some, she stated her depression had worsened. (R. at 978.) She stated she had been laid off, she had back problems, she had no money coming in, and she could not physically stand for more than five minutes. (R. at 978.) Baker's speech was slow, but normal with clear articulation; her insight was full; her judgment was good; she exhibited moderate functional improvement; her impulse control was good; her mood was depressed; she was fully oriented; her attention and concentration were mildly impaired; and she had no memory impairment. (R. at 981.) Baker was diagnosed with dysthymic disorder and generalized anxiety disorder. (R. at 983.) On March 31, 2021, Baker reported doing some better, as she was able to visit her grandson, which improved her mood. (R. at 956.) On April 8, 2021, Baker saw Phillips, reporting she was doing some better, as counseling was helpful, and Neurontin helped her pain. (R. at 958.)  On April 9, 2021, Baker reported that her symptoms had been minimal the previous week. (R. at 953.) She stated she kept busy working puzzles and word searches. (R. at 953.) Burke noted that Baker had been working well and making progress toward her self-care goal. (R. at 953.)

On April 13, 2021, Baker saw Mays, reporting her anxiety and depression were controlled. (R. at 997.) Baker was fully oriented; her neck had normal range of motion; her cardiovascular and pulmonary examinations were normal; her

---

[10] Morton's neuroma is a painful neuropathy resulting from a benign enlargement of the common plantar digital nerve. *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8277559/ (last visited June 1, 2023).

musculoskeletal system was normal; she had normal reflexes; and her mood, affect, behavior, judgment and thought content were normal. (R. at 999.) On April 15, 2021, Baker saw Burke, reporting improvement in her mood. (R. at 951.) She stated she had engaged in self-care, she spent time with her son and grandson, and she continued to work on puzzles. (R. at 951.)

On April 23, 2021, Phillips completed a mental assessment, finding Baker had marked limitations, resulting in an unsatisfactory work performance, in her ability to deal with the public; to deal with work stresses; to maintain attention and concentration; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 1016-18.) Phillips opined that Baker retained at least a satisfactory ability to make all other occupational, performance and personal/social adjustments. (R. at 1016-17.) Phillips found Baker would be absent from work more than two days a month. (R. at 1018.) Phillips based these findings on Baker being emotionally liable; her anxiety and depression; her chronic pain; and difficulty staying focused. (R. at 1017-18.)

On April 28, 2021, Burke completed a mental assessment, finding Baker had marked limitations, resulting in an unsatisfactory work performance, in her ability to relate to co-workers; to deal with the public; to interact with supervisors; to deal with work stresses; to function independently; to maintain attention and concentration; to understand, remember and carry out complex job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 1019-21.) Burke opined that Baker retained a satisfactory ability to make all other occupational, performance and personal/social adjustments. (R. at 1019-20.) Burke found Baker would be absent from work more

than two days a month. (R. at 1021.) Burke based these findings on Baker's symptoms of anxiety, depression and pain. (R. at 1020-21.)

On May 4, 2021, Baker saw Burke, reporting her depressive symptoms had been "a little worse" due to a recent back procedure, but were improving overall. (R. at 1033.) She reported she was sleeping better, and her depressive symptoms were improving with medication. (R. at 1033.) On May 13, 2021, Baker reported she had been too busy with her son to engage in self-care, and she expressed feelings of anger after going to court with him. (R. at 1031.) She reported fewer depressive symptoms, but increased anxiety. (R. at 1031.) On May 20, 2021, Baker reported her anxiety was less, and her physical symptoms were "a lot less." (R. at 1028.) She stated she still experienced racing thoughts and depressive symptoms. (R. at 1028.)

Baker was seen at Ballad Health Cancer Care in May and June 2021, and was diagnosed with leukocytosis,[11] unspecified type. (R. at 1056-75.) On May 17, 2021, a CT scan of Baker's abdomen and pelvis showed no acute findings. (R. at 1024-25, 1056.) Examinations showed Baker was fully oriented; her neck had normal range of motion; her cardiovascular and pulmonary examinations were normal; her musculoskeletal system had normal range of motion with no tenderness or edema; she had normal reflexes; and her mood, affect and behavior were normal. (R. at 1060, 1069.) Baker scored zero on the patient health questionnaire 2-item, ("PHQ-2"), test.

---

[11] Leukocytosis, or high white blood cell count, can indicate a range of conditions, including infections, inflammation, injury and immune system disorders. *See* https://my.clevelandclinic.org/health/diagnostics/17704-high-white-blood-cell-count (last visited June 6, 2023).

(R. at 1059, 1068.) It was noted that Baker's pain assessment did not warrant any follow up for pain. (R. at 1061.)

On July 2, 2021, Mays completed a medical assessment, finding Baker could lift and/or carry less than 10 pounds occasionally and frequently; sit, stand and/or walk for less than one hour each in an eight-hour workday; occasionally kneel and balance; and never climb, stoop, crouch or crawl. (R. at 36-38.) She found Baker was limited in her ability to feel and to push/pull, and she was restricted from working around vibration. (R. at 37-38.) In making this residual functional capacity determination, Mays considered Baker's neck and back pain, neuropathy and lower extremity weakness. (R. at 36-38.)

Mays also completed a mental assessment, finding Baker had marked limitations, resulting in an unsatisfactory work performance, in her ability to deal with work stresses and to maintain attention and concentration. (R. at 39-41.) Mays opined that Baker retained at least a satisfactory ability to make all other occupational, performance and personal/social adjustments. (R. at 39-40.) Mays found Baker would be absent from work more than two days a month. (R. at 41.) Mays based these findings on Baker's cervical and lumbar pain. (R. at 40-41.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2022). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a

-14-

severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2022).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Baker filed her application in April 2020; thus, 20 C.F.R. § 404.1520c governs how the ALJ considered the medical opinions here.[12] When making a residual functional capacity assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimant's medical sources. 20 C.F.R. § 404.1520c(a) (2022). Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case. *See* 20 C.F.R. § 404.1520c(b), (c)(1)-(5) (2022) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. § 404.1520c(b)(1) (2022).

The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. *See* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and

---

[12] 20 C.F.R. § 404.1520c applies to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 404.1520c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization and other factors such as an understanding of the disability program's policies and evidentiary requirements.[13] *See* 20 C.F.R. § 404.1520c(b)(2).

Baker argues the ALJ erred by improperly determining her residual functional capacity by rejecting the opinions of Dr. Sheppard, Phillips and Burke. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-6.)

The ALJ is not required to adopt a residual functional capacity assessment of a treating or examining physician in determining a claimant's residual functional capacity. Instead, the ALJ is solely responsible for determining a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1546(c) (2022); *see also* 20 C.F.R. § 404.1527(d)(2) (2022) (a claimant's residual functional capacity is an issue reserved exclusively to the Commissioner). The relevant question is whether the ALJ's residual functional capacity assessment is based upon all the relevant evidence, including medical records, medical source opinions and the claimant's subjective allegations and description of her own limitations. *See* 20 C.F.R. § 404.1545 (2022).

---

[13] An exception to this is when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization and other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b)(3) (2022).

A claimant's residual functional capacity refers to the most the claimant can still do despite her limitations. *See* 20 C.F.R. § 404.1545(a). The ALJ found Baker had the residual functional capacity to perform sedentary work, except she could frequently climb ramps and stairs, balance, kneel and crawl; she could occasionally stoop and climb ladders, ropes and scaffolds; she could occasionally work at unprotected heights and around hazardous machinery; she could perform simple, routine tasks; and she required a cane for prolonged ambulation. (R. at 22.)

As noted above, Baker's entire argument is based on the ALJ's evaluation of three medical opinions belonging to Dr. Sheppard, Phillips and Burke. (Plaintiff's Brief at 5-6.) In making his residual functional capacity finding, the ALJ evaluated Dr. Sheppard's September 2020 opinion that Baker could lift and carry items weighing less than 10 pounds frequently and occasionally, she could sit, stand and/or walk without interruption for less than two hours each in an eight-hour workday and had other limitations greater than those in the residual functional capacity finding. (R. at 27.) The ALJ found this opinion unpersuasive, as it was not supported by Dr. Sheppard's own examination findings, which noted only tenderness and limited range of motion in the cervical and lumbar spine and no deficits in gait, strength and sensation. (R. at 27.) In fact, on February 28, 2020, the same day Baker alleges she became disabled, Dr. Sheppard examined her and found that she was not in distress; her neck had normal range of motion; she had no swelling in her limbs; and, despite decreased range of motion and tenderness in her cervical and lumbar spine, she displayed normal reflexes. In April and May 2020, Dr. Sheppard and Dr. Frye consistently made similar findings, which stand in stark contrast with the limitations he assigned in his opinion.

-18-

The ALJ also found Dr. Sheppard's opinion to be inconsistent with the overall record, which showed no significant objective examination abnormalities to support such extreme limitations. (R. at 27.) For example, Dr. Frye and nurse practitioner Mays consistently found Baker displayed a normal gait, and, despite limited back range of motion, she had full leg strength; straight leg raising tests were negative; and she had no neurological or motor deficits. Additionally, Baker reported Neurontin helped her pain, and she stated she received good relief from her trigger point injections and medial branch blocks. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ found the opinions of state agency physicians, Drs. Koch and Strain,[14] partially persuasive and somewhat consistent with the overall record. (R. at 27.) Both Drs. Koch and Strain opined that Baker was capable of light work. (R. at 26.) However, the ALJ found the evidence submitted after these opinions were rendered, including Baker's hearing testimony, showed that she required a restriction to sedentary work and required a cane for prolonged ambulation. (R. at 27.)

With respect to the mental opinion evidence, Baker argues that the ALJ erred by rejecting the opinions of Phillips and Burke. (Plaintiff's Brief at 5-6.) The ALJ found their opinions unpersuasive, as they were not supported by their own medical records. (R. at 27.) The ALJ noted that, despite having a variable mood, Baker's

---

[14] Baker argues the ALJ erred by relying on the state agency physicians' "stale [and] outdated" opinions. (Plaintiff's Brief at 6.) It is noted that Dr. Sheppard's opinion was issued on September 1, 2020, and Drs. Koch and Strain issued their findings in August and October 2020. Thus, I find this argument meritless, as all three opinions were issued at approximately the same time.

mental status findings were consistently unremarkable, including findings that she made good eye contact, and her speech, hygiene, thought process, thought content, attention and concentration, insight and judgment and memory all were normal. (R. at 27-28.)

Additionally, the ALJ noted that Phillips's and Burke's findings were inconsistent with the overall record, as other providers noted entirely normal mental status examination findings. (R. at 28.) For example, Dr. Sheppard found Baker had a normal mood and affect; Dr. Frye observed that Baker had a normal mood, affect, judgment and thought content; and nurse practitioner Mays found that Baker exhibited normal mood, affect, behavior, judgment and thought content. The ALJ found the opinions of state agency psychological consultants, Montgomery and McClain, both of whom found Baker's mental impairments were nonsevere, partially persuasive and somewhat consistent with the overall record. (R. at 27.) Specifically, the ALJ noted Baker underwent additional mental health treatment, and the opinions of her mental health providers were submitted after Montgomery and McClain rendered their opinions. (R. at 27.) The ALJ stated that these additional opinions supported a finding of severe mental health impairments, requiring a restriction to simple, routine tasks. (R. at 27.) However, the ALJ also noted that Baker was able to live alone and perform a variety of activities of daily living. (R. at 28.) Baker reported that she worked puzzles and word searches; she had no social interaction problems; and she got along well with authority figures, which contradicts the findings made by Phillips and Burke regarding her purported social limitations. The record also shows that, while Baker reported depression, she stated her anxiety and depression were controlled with medication and counseling. *See Gross,* 785 F.2d at 1166.

-20-

For all the foregoing reasons, I find that the ALJ's evaluation of medical evidence is supported by substantial evidence. Based on the same evidence stated above, I further find that substantial evidence supports the ALJ's residual functional capacity finding and ultimate finding that Baker was not disabled under the Act and not entitled to DIB benefits.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the ALJ's consideration of the opinion evidence;

2. Substantial evidence exists in the record to support the ALJ's residual functional capacity finding; and

3. Substantial evidence exists in the record to support the Commissioner's finding that Baker was not disabled under the Act and was not entitled to DIB benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Baker's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    July 21, 2023.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE